LÓPEZ & MORÁN, Plaintiffs and Appellants, *v.* SOBRINOS DE EZQUIAGA, Defendants and Appellees.

No. 3429. Argued February 12, 1925.—Decided March 31, 1925.

1. CONTRACT—PURCHASE AND SALE—MANUFACTURE OF SUGAR—PAYMENT IN PRODUCT—TRANSFER OF TITLE.—Under a contract for the purchase and sale of sugar cane and manufacture of sugar wherein it is stipulated that the sugar

shall be delivered to the planter "at the factory where he shall go to receive it," the planter does not acquire ownership of the sugar until its physical delivery, or until he has separated it from the other sugar in the warehouse of the factory.

First District Court of San Juan, Charles E. Foote, J. Judgment for the defendant in an action of revendication. *Affirmed.*

*Antonio Sarmiento* for the appellants. *Eduardo Acuña* for the appellees.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

In this case a question is raised as to what is the nature of the action, but although the appellants allege that the court below erred in considering the action as one in revendication of personal property and deny that it is, yet in the titles of both the original and the amended complaints they style it as one in revendication of personal property.

This point, however, seems to be of no importance in the decision of this case, for in view of the conclusions at which we have arrived, as will be seen hereafter, the most important thing is not the style of the action but the legal relation that the plaintiffs in some manner attempt to establish with the defendants in order to obtain the relief sought.

On June 3, 1921, the plaintiffs, as lessees of certain properties of the Central Vannina, the owner of a sugar factory and not a party to this action, entered into a contract with the said central for the purchase and sale of sugar cane and manufacture of sugar during the grinding season of 1921–22, containing, among others, the two following stipulations which are the basis of the theory of the complaint:

"9. The liquidation of the sugar corresponding to each planter shall be made weekly and the amount thereof shall be paid when the sugar is sold on the San Juan Exchange or at any other proper place.

"It shall be understood that the sugar to be received by each planter is sold to the central, the price to be fixed on the basis of the actual price or the average price of the sales made by the central

in San Juan during the week corresponding to the liquidation. If no sale should be made during that week, then the liquidation shall be made according to the price of the next sale.

"10. If any planter should desire to receive sugar in payment he shall give the factory a week's notice and the sugar will be delivered to him at the factory, where he shall go to receive it. In default of such notice the central may sell the product."

On the other hand the said Central Vannina, on August 8, 1921, entered into a financing contract with the defendants, which was amplified on September 22, 1921, the central agreeing to deliver to the defendants for sale all sugar manufactured by it during the grinding season of 1921–22, with the exception of a certain amount to be delivered to the planters in compliance with their contracts with the central. It was also agreed that from the price of sale of each sack of sugar the defendants should deduct $3.50 to be applied to the payment of the loan, the Central Vannina to receive the balance.

During the months of March, April and May of 1922 the plaintiffs delivered several lots of sugar cane to the Central Vannina. There is no question that the central received written notice from the plaintiffs to the effect that they elected to receive sugar in payment of their percentage of each quintal of sugar cane delivered, in the exercise of their option to be paid in money or sugar. The central delivered a part of the sugar, but failed to deliver 302,306 pounds, and the appellants allege that the defendants appropriated this amount, praying that it be returned to them or that they be paid the price obtained for the sugar, together with the additional profit (*lucrum cessans*) that could have been obtained.

Nor is there any controversy as to whether the quantity of sugar claimed was manufactured by the Central Vannina while grinding the sugar cane of other planters and of the central mingled with that of the plaintiffs, or at least there

is absolutely no evidence that it was ground separately from other sugar cane not belonging to the appellants. There is no doubt, therefore, that as the sugar was manufactured it was stored in the warehouse of the central and that the sugar of the plaintiffs produced from their sugar cane was mingled with the rest of the sugar without any mark or sign of distinction to indicate that it was their sugar. Under these circumstances it can not be said that the election to receive payment in sugar under the option clause vested in the plaintiffs the ownership of their percentage of the sugar manufactured from their sugar cane under the contract or any part of it before the Central Vannina had made physical delivery thereof to the plaintiffs or the latter had separated in the warehouse the number of bags belonging to them under the contract. It is true that according to section 1366 of the Civil Code when personal property is sold it is considered to have been delivered, among other ways, by the mere consent and agreement of the contracting parties, if the thing sold can not be transferred to the possession of the vendee, or if the latter already has possession of it for any other reason. But aside from the fact that such consent or agreement could have no lawful effect in this case because it was indispensable to separate the amount of sugar to be delivered for the reason that it was mingled with other sugar belonging to others owing to the process of manufacturing from the raw material, it could not be held that there was such meeting of minds, for it was expressly agreed in the said 10th clause of the contract that the physical delivery should be made at the factory, where the planter had to go to receive his sugar.

In connection with the purchase and sale and particular character of certain classes of personal property American jurisprudence has laid down the following doctrine which we consider in point:

"In case of a contract for the sale of a specified number of tons of hay to be taken out of a stack or mow containing a larger amount, it has frequently been held that no title passes to the buyer before the segregation and application to the contract of the hay to be taken by the buyer. And the same has been held as regards the sale of a certain number of cords of hardwood to be taken from a pile containing both hard and soft wood; of lumber to be taken from a larger pile; of a certain number of pounds of hams to be taken from a larger mass; of a certain number of bales of cotton of a certain weight, to be taken from a larger mass in bulk, or from a growing crop; of a certain number of pounds of wool to be taken from a larger mass; of a certain number of car wheels constituting a part of a larger number; of a certain quantity of oil to be taken from a cistern containing a larger amount; and of a given number of brick to be taken from a kiln containing a larger number." 24 R.C.L. 28, 29.

The appellants have tentatively contended that the sugar claimed was a deposit in the custody of the central. That theory can not be deduced from the agreement and there is nothing in the evidence in that sense.

We have found no error on the part of the lower court either in the findings or in the conclusions. Nor did it err in admitting in evidence the financing contract offered by the defendants, for it was consistent with one of their defenses. When the Central Vannina made physical delivery to the defendants of a number of sacks of sugar, there being no showing that some of them belonged to the plaintiffs by reason of previous delivery or segregation, the evidence was pertinent to show that by the delivery of the sugar the defendants had acquired under the financing contract the ownership thereof, without any responsibility toward the plaintiffs, who, therefore, had no cause of action against them.

For all of the foregoing the judgment appealed from must be affirmed.